## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RAY A. BROOKS**                                   **CIVIL ACTION**

**VERSUS**                                          **NO. 14-0090**

**BURL CAIN, WARDEN LSP**                           **SECTION "J"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Ray A. Brooks ("Brooks"), appearing through counsel, is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On May 23, 2006, Brooks was indicted by a Grand Jury in St. Tammany Parish for the first degree murder of Scott Ramsey.[3] Brooks entered a plea of not guilty to the charge on June 22, 2006.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 8, Grand Jury Return, 5/23/06.

[4]St. Rec. Vol. 1 of 8, Minute Entry, 6/22/06.

The record reflects that Ramsey was known to make his living by selling crack cocaine.[5] On the evening before the shooting, Ramsey went to a neighborhood convenience store and displayed a large amount of cash to several people including Brooks. Later that night, Ramsey counted his cash, approximately $750.00, and placed it in his sock.

In the early morning hours of February 22, 2006, Melissa Hull and Ramsey were sitting on the screened porch of a house located at 1021 North Polk Street in Covington, Louisiana. At some point, Brooks approached them, pointed a gun at Ramsey, and demanded that he "empty his pockets." Ramsey jumped off of the porch through a hole in the screen, and Brooks shot him. Ramsey unsuccessfully attempted to escape, and he begged for his life. Brooks again demanded that Ramsey surrender his belongings. Ramsey ultimately gave Brooks the cash and some crack cocaine. Brooks then shot Ramsey again before walking away.

When the police arrived, they found Ramsey's lifeless body lying in front of the Polk Street residence. Ramsey died of multiple gunshot wounds to the back, chest, and buttocks.

After the State announced it would not seek the death penalty, Brooks was tried before a jury on March 9 through 12, 2010, and was found guilty as charged of first degree murder.[6] On May 6, 2010, the Trial Court denied Brooks' motion for a new trial. After waiver of legal delays, the Court

---

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. *State v. Brooks*, 66 So.3d 77 (La. App. 1st Cir. 2011) (Table); *State v. Brooks*, No. 2010-1864, 2011 WL 2616865, at *1-*2 (La. App. 1st Cir. May 6, 2011); St. Rec. Vol. 6 of 8, 1st Cir. Opinion, 2010 KA 1864, 5/6/11.

[6]St. Rec. Vol. 1 of 8, Trial Minutes, 3/9/10; Trial Minutes, 3/10/10; Trial Minutes, 3/11/10; Trial Minutes, 3/12/10; Jury Verdict, 3/12/10; St. Rec. Vol. 2 of 8, Trial Transcript, 3/9/10; St. Rec. Vol. 3 of 8, Trial Transcript (continued), 3/9/10; Trial Transcript, 3/10/10; St. Rec. Vol. 4 of 8, Trial Transcript (continued), 3/10/10; Trial Transcript, 3/11/10; St. Rec. Vol. 5 of 8, Trial Transcript (continued), 3/11/10; Trial Transcript, 3/12/10.

sentenced Brooks to serve life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[7]

On direct appeal, Brooks's counsel asserted five errors:[8] (1) the Trial Court erred in failing to grant the defense's motion for mistrial based on the State's playing of Brooks's videotaped statement that included references to other crimes; (2) the Trial Court erred in failing to grant the defense's motion for mistrial based on the State's reference to the Trial Court's pretrial ruling on the motion to suppress the identification; (3) the Trial Court erred in refusing to allow testimony regarding a statement made by Freddie Bedford; (4) the Trial Court erred in ruling that the State could offer as rebuttal or impeachment evidence of an alleged confession Brooks's made to Robin Allen, since Brooks only received notice of the alleged confession four days before trial; (5) the State's failure to provide discovery consisting of criminal history and impeachment information for its witnesses until the day of trial, as well as the late notice of the alleged confession, prevented the defense from properly preparing for trial, rendering defense counsel ineffective at trial.

The Louisiana First Circuit affirmed Brooks's conviction and sentence on May 6, 2011, finding the fourth issue to be procedurally barred and the remaining issues to be without merit.[9]

On November 18, 2011, the Louisiana Supreme Court denied without reasons the writ application filed by Brooks's counsel.[10] His conviction and sentence became final ninety (90) days

---

[7]St. Rec. Vol. 1 of 8, Sentencing Minutes, 5/6/10; St. Rec. Vol. 5 of 8, Sentencing Transcript, 5/6/10 St. Rec. Vol. 2 of 8, Motion for New Trial, 5/6/10.

[8]St. Rec. Vol. 8 of 8, Appeal Brief, 10-KA-1864, 12/23/10; Reply Brief, 10-KA-1864, 2/7/11.

[9]*Brooks*, 66 So.3d at 77; *Brooks*, 2011 WL 2616865, at *1; St. Rec. Vol. 6 of 8, 1st Cir. Opinion, 2010 KA 1864, 5/6/11.

[10]*State v. Brooks*, 75 So.3d 449 (La. 2011); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2011-K-1148, 11/18/11; La. S. Ct. Writ Application, 11-K-1148, 6/3/11; St. Rec. Vol. 6 of 8, La. S. Ct. Letter, 2011-K-1148, 6/6/11.  Brooks's Louisiana Supreme Court writ application did not include his third, procedurally defaulted claim.

later, on February 16, 2012, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On September 18, 2012, Brooks submitted *pro se* an application for post-conviction relief to the Trial Court raising the following grounds for relief:[11] (1) the evidence was insufficient to prove an aggravating factor of intent and to warrant a life sentence; (2) he was denied effective assistance of counsel for failure to move to quash the defective indictment which failed to list the aggravating factor of armed robbery; (3) the Trial Court was without jurisdiction to proceed because of the defective indictment; (4) he was denied effective assistance of counsel when counsel failed to file the motion to quash and a motion to arrest the judgment based on the defective indictment; (5) he was denied effective assistance of counsel when counsel denied him the right to testify on his own behalf; (6) he was denied effective assistance of counsel when counsel did not advise him of a plea offer; (7) the photographic identification process was impermissibly suggestive; (8) he was denied effective assistance of counsel where counsel failed to investigate and interview eyewitnesses, alibi witnesses and co-defendants; and (9) the trial court erred in finding that he waived the right to testify.

After receiving a response from the State, the Trial Court denied the application on November 14, 2012, declaring the claims to be without merit.[12] The Louisiana First Circuit denied

---

[11]St. Rec. Vol. 6 of 8, Application for Post-Conviction Relief, 10/15/12 (dated 9/18/12); Supplemental Application, 11/2/12 (dated 10/26/12).

[12]St. Rec. Vol. 6 of 8, Trial Court Order, 11/14/12; State's Answer, 11/13/12.

Brooks's related writ application on March 1, 2013, without state reasons.[13]  On September 13, 2013, the Louisiana Supreme Court also denied Brooks's writ application in that Court without stated reasons.[14]

## II.    Federal Petition

On January 13, 2014, Brooks through counsel filed a federal petition for habeas corpus relief asserting the following grounds for relief:[15] (1) ineffective assistance of counsel for failure to allow the petitioner to testify; (2) ineffective assistance of counsel for failure to engage in plea negotiations; and (3) ineffective assistance of counsel for failure to investigate.  Brooks also requests that this Court conduct an evidentiary hearing to resolve any dispute of facts necessary to resolve his claims.

The State filed an answer and memorandum in opposition to Brooks's petition conceding its timely filing and the exhaustion of state remedies.[16]  The State argues that Brooks is not entitled to an evidentiary hearing, his claims are without merit, and he is not entitled to federal habeas relief.

In response, Brooks argues that he is entitled to a federal evidentiary hearing on his ineffective assistance of counsel claims because Brooks was unable to afford counsel on state post-conviction review and the summary denial of his claims was contrary to federal law.[17]

---

[13]St. Rec. Vol. 4 of 5, 1st Cir. Order, 2012-KW-2094, 3/1/13; St. Rec. Vol. 7 of 8, 1st Cir. Writ Application, 2012-KW-2094, 12/18/12.

[14]*State ex rel. Brooks v. State*, 120 So.3d 696 (La. 2013); St. Rec. Vol. 7 of 8, La. S. Ct. Order, 2013-KH-0731, 9/13/13; La. S. Ct. Writ Application, 13-KH-731, 4/4/13 (dated 3/28/13); St. Rec. Vol. 6 of 8, La. S. Ct. Letter, 2013-KH-731, 4/4/13.

[15]Rec. Doc. No. 1.

[16]Rec. Doc. Nos. 14, 15.

[17]Rec. Doc. No. 18.

## III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[18] applies to this petition, which was filed by Gonzalez's counsel on October 17, 2013. The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes the timeliness of the petition and exhaustion of state remedies on each of the claims. The State also does not raise a procedural default defense and no such defense is apparent from the record. The Court will proceed to address the substance of Brooks's claims.

## IV. Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).

---

[18]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it

correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.    Evidentiary Hearing Not Warranted

As an initial matter, the Court considers Brooks's claim that the state courts erred in denying him post-conviction relief without first conducting an evidentiary hearing and that this Court should conduct its own evidentiary hearing on the issues raised. Brooks is not entitled to an evidentiary hearing in this federal court.

It is well settled doctrine that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001). An attack on the State habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the concern in federal habeas review. *Id.*, at 320; *see also*, *Drevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *see also*, *Lackawanna County Dist. Atty. v. Coss*, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review)). Thus, any challenge by Brooks as to the manner in which his state application for post-conviction relief was handled, summarily or otherwise, is not the concern of this Court nor the focus of this Court's review under the standards set forth above.

Furthermore, Brooks is not entitled to a federal evidentiary hearing. As discussed by the Supreme Court in *Cullen*, 131 S. Ct. at 1400-01, the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2). The statute restricts evidentiary hearings to those instances where the claim relies on a new rule of law retroactively applied on collateral review or where the predicate for the claim could not have been previously discovered with due diligence and where the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence. *See Cullen*, 131 S. Ct. at 1400-01.

The Court in *Cullen* further recognized that where these factors are not met, evidence presented for the first time on federal habeas review may not be considered on federal habeas review to address the merits of the claims under § 2254(d)(1). *Id.* Thus, the federal habeas court is limited to review of only the evidence and record before the state courts that reviewed the federal claim presented. *See Cullen*, 131 S. Ct. at 1400; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow*

*v. Cooper*, 505 F. App'x 285, 295-96 (5th Cir. 2012); *Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013). In other words, this Court does not and will not consider evidentiary materials that were not first presented to the state courts.

As addressed in the following discussion of his claims, Brooks has made no showing of entitlement to relief from his conviction by clear and convincing evidence. He also has not based his claim on a new, retroactive rule of law as otherwise required under the provisions of § 2254(e)(2). There is no basis in this record to grant an evidentiary hearing in this case.

The Court further finds that Brooks reliance on the Supreme Court decisions in *Maples v. Thomas*, __U.S.__, 132 S. Ct. 912 (2012), and *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012), is misplaced, and neither holding gives basis for this Court to conduct an evidentiary hearing in this case. In *Maples*, the Supreme Court held that attorney abandonment (as opposed to attorney negligence) constituted an extraordinary circumstance that could be sufficient "cause" to relieve a federal habeas petitioner from the consequences of a procedural default in state court. *Id.*, 132 S. Ct. at 917, 919. Brooks did not have counsel to abandon him on post-conviction review and none of his claims were placed in procedural default.

In *Martinez*, the Supreme Court discussed the long-standing holding in *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), that habeas petitioners have no constitutional right to counsel on post-conviction review and that deficient performance by post-conviction counsel therefore does not excuse a procedural default. The Supreme Court carved out an exception to that rule limited to situations in which state law prohibits a defendant from raising an ineffective assistance of trial counsel on direct appeal, when he would have been entitled to appointed counsel, <u>and</u> the ineffective assistance of trial counsel claim is procedurally defaulted or barred from review when the claim is

raised by the prisoner on collateral review where there is no right to counsel. *Id*. at 1319-20. As mentioned above, Brooks's claims are not in procedural default and this "cause" consideration is not relevant here.

Clearly, both *Maples* and *Martinez* addressed attorney performance, or lack thereof, as "cause" to excuse a state imposed procedural bar to a *pro se* prisoner's ineffective assistance of trial counsel claims on collateral review. Neither case considered or was called upon to address whether an evidentiary hearing should be held under the circumstances of Brooks's case.

Brooks's ineffective assistance of counsel claims were <u>not</u> procedurally defaulted on post-conviction review. The record is clear that these claims were instead found by each of the state courts to be meritless, based on the last reasoned opinion of the state trial court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate the basis for its ruling, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The holdings in *Maples* or *Martinez* simply do not apply here. Under the proper standards addressed above, Brooks is not entitled to federal evidentiary hearing.

## VI.   <u>Effective Assistance of Trial Counsel (Claim Nos. 1-3)</u>

Brooks alleges that his trial counsel was ineffective for failing to allow him to testify, failing to discuss plea negotiations, and failure to investigate potential defense witnesses. The State argues that Brooks does not establish that denial of relief on these claims was contrary to the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

As outlined above, Brooks raised these claims on post-conviction review and was denied relief at each level of the state courts. *Ylst*. The state trial court resolved that Brooks failed to prove

a basis for relief and found the claims to be without merit. This finding was adhered to on review by the higher state courts. *Ylst*.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . .

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 131 S. Ct. at 787 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v.*

*McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788 (citation . The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.,* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles*, 556 U.S. at 123). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

## A.    <u>Right to Testify</u>

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. *Rock v. Arkansas*, 483 U.S. 44 (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001); *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994).  A defendant waives his right to testify if that waiver is knowing, intelligent and voluntary. *Bower*, 497 F.3d at 473 (*Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)).  A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'" *Emery*, 139 F.3d at 198 (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990), *reh'g granted*, 953 F.2d 1525 (11th Cir.), *cert. denied*, 506 U.S. 842 (1992)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. It is not enough for a habeas petitioner to merely state that he told his trial attorney that he wanted to testify and that his attorney forbade him from doing so. *Turcios v. Dretke*, No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); *see also*, *Davis v. Prince*, No. 11-0712, 2011 WL 5878155, at *16 (E.D. La. Sept. 28, 2011) (Wilkinson, M.J.), *report and recommendation adopted*, No. 11-0712, 2011 WL 5878152, at *1 (E.D. La. Nov. 23, 2011) (Feldman, J.); *Jones v. Cain*, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007).  The United States Seventh Circuit Court of Appeals in *Underwood* specifically noted the potential problems likely to arise if habeas petitioners, making similar arguments, are not required to satisfy the burden of proof. *Underwood*, 939 F.2d at 475-76.

Adopting the reasoning in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), the *Underwood* Court

recognized that such an assertion, even if made under oath was inadequate to meet that burden:

> . . . this barebones assertion by a defendant, albeit made under oath, is insufficient
> to require a hearing or other action on his claim that his right to testify in his own
> defense was denied him. It just is too facile a tactic to be allowed to succeed. Some
> greater particularity is necessary - and also we think some substantiation is
> necessary, such as an affidavit from the lawyer who allegedly forbade his client to
> testify - to give the claim sufficient credibility to warrant a further investment of
> judicial resources in determining the truth of the claim.

*Id*., 939 F.2d at 476.

Citing *Underwood*, the United States Fifth Circuit Court of Appeals also has indicated

having the same concerns:

> Courts have observed that allowing a bare assertion of a right-to-testify
> violation to precipitate the further investment of judicial resources is problematic.
> See [*Underwood*, 939 F.2d at 476] . . . (stating that a conclusory assertion by a
> defendant that his right to testify was denied him is insufficient to require a hearing
> because "[i]t just is too facile a tactic to be allowed to succeed"). We agree that there
> is "a grave practical difficulty in establishing a mechanism that will protect a
> criminal defendant's personal right ... to testify in his own behalf without rendering
> the criminal process unworkable."

*United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (quoting *Underwood*, 939 F.2d at 475).

Brooks has not presented anything but his unsupported claim that his counsel would not

allow him to testify. The record also contains nothing to support his claim. In fact, the record on

the decision not to testify is more detailed than Brooks's would represent.

After questioning the defense witnesses, counsel met with the trial judge at the bench while

the jury was adjourned.[19] Brooks's counsel at that time notified the trial judge that he intended to

make a record that he and co-counsel consulted with Brooks, and they all agreed that Brooks would

---

[19]St. Rec. Vol. 5 of 8, Trial Transcript (continued), pp. 976-77, 3/11/10.

not testify, after which the defense would rest.[20]  After other matters were handled by the court and counsel, the jury was recalled into the courtroom and Brooks's counsel made the following statement for the record as he had indicated:[21]

> MR. WILLIAMS:
>> Thank you, Judge.
>> Your Honor, at this time the Defense has no more witnesses.  We have discussed with our client, both Mr. Jordan and I, the pros and cons of testifying in his own defense in this case.  And after discussing with him those pros and cons, we have come to an understanding, Mr. Brooks, and his counsel, that it would be in his best interest not to testify.  And he agrees.  And for that reason, he will not be testifying.
>> Mr. Brooks, do you agree with that statement?
>
> MR. RAY BROOKS:
>> Yes, sir.
>
> THE COURT:
>> Thank you, Mr. Brooks. [. . .]

The exchange before the state trial court reflects that Brooks and his counsel had an extended discussion about the decision to testify.  The state trial court had more than "counsel's ready assertion" before it.[22]  Brooks himself acknowledged his agreement not to take the stand based on the advise of counsel and consideration of the "pros and cons" they discussed.  Brooks did not counter counsel's representations to the Trial Court or express his desire to testify over counsel's advice.

As discussed previously, this Court's review is bound by the record that was before the state courts when the claim was addressed and that record contains nothing (nor does this federal record)

---

[20]*Id.*, p. 977.

[21]*Id.*, p. 978.

[22]Rec. Doc. No. 1-1, p. 14.

that would support Brook's intimation that he was forced by counsel not to testify against his will. The record does not demonstrate that counsel denied Brooks the right to testify.

Furthermore, the Fifth Circuit has held that counsel's decision not to place a defendant on the stand is a strategy which seldom will support a challenge of ineffective assistance of counsel. *See Jones v. Cain*, 227 F.3d 228, 231 (5th Cir. 2000) (citing *Robison v. Johnson*, 151 F.3d 256 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999)). Federal courts have consistently recognized that such tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999), *cert. denied*, 528 U.S. 1013 (1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997)).

In this case, Brooks does not and has not challenged the basis for counsel's advise that he not testify, and Brooks has never argued that this advise was unreasonable under the circumstances of his case. Brooks does not present any affidavits, not even one of his own, that would establish an improvident basis for counsel's advice that he not take the stand.

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999). The Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. *Strickland*, 466 U.S. at 689. Brooks has not met his burden to defeat this presumption.

The Court defers to counsel's decision to advise against Brooks's taking the stand, and to the state courts' implicit finding that counsel acted reasonably in so advising Brooks. The state courts' denial of relief was not contrary to *Strickland*. Brooks is not entitled to relief on this claim.

**B.      Plea Negotiations**

Brooks alleges that his counsel did not pursue negotiations with the State after an initial offer of fifteen years was rejected. Brooks does not indicate who made the offer and who rejected the offer. Nevertheless, Brooks contends that both he and the State were willing to pursue further negotiations, and his counsel did not respond or further discuss the matter with anyone.

The State avers that the record contains no indication or evidence that the prosecution made a plea offer to the defense or was willing to accept a plea. As a result, the State argues, Brooks has failed to establish that counsel was deficient in failing to pursue negotiations and can not prove any prejudice as a result.

Under *Strickland*, when a petitioner contends that his counsel failed to properly negotiate a favorable plea, he "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1385 (2012). The Supreme Court has made clear, however, that "a defendant has no right to be offered a plea . . . nor a federal right that the judge accept it." *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1410 (2012)(citations omitted). The Supreme Court warns that, "[i]f no plea offer is made, or a plea deal

is accepted by the defendant but rejected by the judge" there is no basis for an ineffective assistance of counsel claim under the Sixth Amendment. *Lafler*, 132 S. Ct. at 1387.

When Brooks raised this claim on state post-conviction review, the State replied "[t]here is no evidence that the state would have accepted a lesser plea since this is an indictment for first degree murder."[23] The State again, in this federal proceeding, avers that there was no evidence in the record that the State made a plea offer or that the State was willing to negotiate a plea in Brooks's case.[24] Brooks therefore has not established the initial premise for this Court to consider a Sixth Amendment claim of ineffective assistance of counsel.

A thorough review of the state court pleadings and records fails to reveal any indication that the prosecutor offered a plea or was willing to negotiate a plea. On the contrary, the only reference by the State can be found in the post-conviction pleadings where the State indicated it was not willing to do so. Counsel can not be held to have deficiently performed where the State was unwilling to negotiate, and Brooks has not established prejudice where no plea was offered to him. *See Lafler*, 132 S. Ct. at 1387.

The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of *Strickland*. Brooks is not entitled to relief.

## C.     Investigate Potential Defense Witnesses

Brooks alleges that his counsel failed to locate, interview, prepare, and call defense witnesses. Brooks specifically contends that counsel failed to interview Melissa Hull, Helen

---

[23]St. Rec. Vol. 6 of 8, State's Answer, p. 5, 11/13/12.

[24]Rec. Doc. No. 15, p. 8.

Richardson, and Chellander Harper before trial. He summarily argues that counsel's failure to interview these witnesses had an impact on the preparation for cross-examination.

The State responds that Brooks has failed to establish that counsel's cross-examination was inadequate or prejudicial in any specific way.

It is well settled that a habeas petitioner cannot show prejudice with respect to a claim that counsel failed to investigate a defense without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation). Brooks has not alleged much less pointed to any particular exculpatory information that counsel could have obtained from further investigation or pretrial interviews with the named witnesses. His superficial argument provides no reason to undermine the deference due to his counsel's trial decisions or the denial of relief on this issue by the state courts. *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). This is not sufficient to establish a deficiency in counsel's performance. *Moawad*, 143 F.3d at 948.

Furthermore, Brooks has not demonstrated that counsel failed to investigate in a manner sufficient to question the referenced witnesses. The record is clear that counsel was quite familiar

with the statements made by Melissa Hull and used that information to cross-examine other State witnesses and argue for the defense in the pretrial hearings.[25]  Counsel made efforts to locate Hull before trial.[26]  Information related to Hull formed the basis of other discovery and continuance requests by Brooks's counsel.[27]  Counsel had investigators still looking into Hull's criminal history until the day of trial.[28]

Counsel also demonstrated detailed knowledge about Hull and her activities related to Brooks's arrest and thereafter.[29]  In fact, Hull's criminal history was the subject of a motion in limine and an extensive hearing which was held during trial and outside of the jury's presence.[30]  Counsel also engaged in extensive and meaningful cross-examination of Hull during trial in the presence of the jury.  Counsel utilized Hull's statements to question other witnesses about the veracity of her identification of Brooks as the perpetrator.[31]

The same is true of counsel's familiarity with Chellander Harper, where counsel demonstrated a detailed knowledge of her statements and anticipated testimony prior to trial.[32]  Counsel also engaged in detailed and relevant questioning of both Harper, who was a defense

---

[25]*See*, *e.g.*, St. Rec. Vol. 2 of 8, Hearing Transcript, pp. 241-266, 11/13/09.

[26]*Id*., p. 269.

[27]St. Rec. Vol. 2 of 8, Hearing Transcript, pp. 301, 312, 3/8/10; Trial Transcript, pp. 324-26, 3/9/10.

[28]*Id*., p. 302; St. Rec. Vol. 2 of 8, Trial Transcript, pp. 324-26, 3/9/10.

[29]*Id*., pp. 312, 316-17.

[30]St. Rec. Vol. 4 of 8, Trial Transcript (continued), pp. 720-739, 3/10/10.

[31]*See*, *e.g.*, St. Rec. Vol. 5 of 8, Trial Transcript (continued), p. 916, *et seq.*, 3/11/10.

[32]St. Rec. Vol. 2 of 8, Hearing Transcript, pp. 317-18 (misreferenced as Shawn Harper), 3/8/10.

witness, and Helen Richardson.[33]   The record defies Brooks suggestion that counsel was not

prepared to question these witnesses or that he was prejudiced without more investigation into their

anticipated testimony.

Brooks also fails to point to any other witnesses to which counsel could have turned in the

presentation of his defense.   "'Complaints of uncalled witnesses are not favored, because the

presentation of testimonial evidence is a matter of trial strategy and because allegations of what a

witness would have testified are largely speculative.'"  *Graves v. Cockrell*, 351 F.3d 143, 156 (5th

Cir. 2003) (*quoting Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).   "'Failure to

present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if

[counsel] could have concluded, for tactical reasons, that attempting to present such evidence would

be unwise.'"  *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (*quoting Williams v. Cain*, 125

F.3d 269, 278 (5th Cir. 1997)).

In this case, Brooks has not identified any other particular witnesses nor has he suggested

to what any potential witnesses may have testified.  He therefore has failed to establish a deficient

performance or prejudice arising from counsel's failure to call additional witnesses or further

investigate the three identified trial witnesses.

For the foregoing reasons, Brooks has failed to establish that the state courts' denial of relief

on his ineffective assistance of counsel claims was contrary to, or an unreasonable application of

*Strickland* and its progeny.  Brooks is not entitled to relief on these claims.

---

[33]St. Rec. Vol. 5 of 8, Trial Transcript (continued), pp. 892, 894-899, 3/11/10.

## VII.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Brooks's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this 27th day of August, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[34]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.